## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

TODD GROFF, individually and DIANNE GROFF, individually,

                Plaintiff,

vs.

STATE FARM FIRE AND CASUALTY COMPANY, a foreign corporation,

                Defendants.

Case No. 10-CV-238-SPS

## TODD GROFF AND DIANNE GROFF'S RESPONSE TO STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

By    /s/ Randall E. Long, OBA #22216
        DAN S. FOLLUO, OBA# 11303
        *dfolluo@rhodesokla.com*
        WILLIAM T. McKEE, OBA #15305
        *bmckee@rhodesokla.com*
        RANDALL E. LONG, OBA #22216
        *rlong@rhodesokla.com*
        RHODES, HIERONYMUS, JONES,
        TUCKER & GABLE
        P.O. Box 21100
        Tulsa, Oklahoma 74121-1100
        (918) 582-1173
        (918) 592-3390 Facsimile
        **ATTORNEYS FOR PLAINTIFFSS**

## TABLE OF CONTENTS

I.      Introduction.................................................................................................1

II.     Response to State Farm's Statement of Facts.................................................4

III.    Additional Facts Defeating State Farm's Motion..........................................6

IV.     Principles of Insurance Policy Interpretation ...............................................8

V.      State Farm is Not Entitled to Judgment as a Matter
        of Law on the Issue of Coverage for Corrosion ............................................9

        a.      This court has already ruled that State Farm is
                not entitled to judgment as a matter of law
                on the issue of coverage for corrosion..............................................9

        b.      Exclusions (i) and (j) do not bar coverage for
                the corrosion damage at issue ........................................................10

VI.     The Policy Provides Coverage for Debris Removal.....................................16

VII.    Summary Judgment is Improper on the Bad Faith Claim ...........................18

## TABLE OF AUTHORITIES

**Cases:**

*242-44 E. 77th St., LLC v. Greater N.Y. Mut. Ins. Co.,*
31 A.D.3d 100 (N.Y. App. Div. 2006) ............................................................. 13

*Badillo v. Mid Century, Ins. Co.,* 121 P.3d 1080 (Okla. 2005) ........................ 18, 19

*Berman v. Amex Assur. Co.,* 2011 U.S. Dist. LEXIS 23716 (C.D. Cal. Feb. 22, 2011) ................... 13

*Berry v. Comm'l Union Ins. Co.,* 87 F.3d 387 (9th Cir. 1996) ............................ 14

*Bowers v. Farmers Ins. Exch.,* 991 P.2d 734 (Wash. App. 2000) ....................... 24

*BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.,* 148 P.3d 832 (Okla. 2005) ................... 16

*Branch v. Farmers Ins. Co.,* 55 P.3d 1023 (Okla. 2002) ................................... 17

*Broadway Clinic v. Liberty Mut. Ins. Co.,* 139 P.3d 873 (Okla. 2006) ............... 14

*Brodkin v. State Farm Fire & Cas. Co.,* 217 Cal.App.3d 210 (1989) ................... 14

*Cavalier Group v. Strescon Indus., Inc.,* 782 F. Supp. 946 (D. Del. 1992) ........... 11

*Christian v. Am. Home Assur. Co.,* 577 P.2d 899 (Okla. 1977) ......................... 18

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.,*
1999 U.S. Dist. LEXIS 11873 (D. Or. Aug. 4, 1999) .................................. 23

*Dodson v. St. Paul Ins. Co.,* 812 P.2d 372 (Okla. 1991) ............................... 8, 15

*Ehsan v. Ericson Agency,*
2003 Conn. Super. LEXIS 1969 (Conn. Super. Ct. July 3, 2003) ................... 13

*Farmers Ins. Co. v. Trutanich,* 858 P.2d 1332 (Or. Ct. App. 1993) ................ 17, 23

*Gerawan Farming Ptnrs., Inc. v. Westchester Surplus Lines Ins. Co.,*
2008 U.S. Dist. LEXIS 4511 (E.D. Cal. Jan. 4, 2008) ............................... 13, 14

*Graff v. Allstate Ins. Co.,* 54 P.3d 1266 (Wash. App. 2002) ........................... 24

*Haworth v. Jantzen,* 172 P.3d 193 (Okla. 2006) ............................................ 9

*Interstate Gourmet Coffee Roasters, Inc. v. Seaco Ins. Co.*,
  794 N.E.2d 607 (Mass. App. Ct. 2003) ...................................................................... 17

*Lexington Ins. Co. v. Ryder System, Inc.*, 234 S.E.2d 839 (Ga. App. 1977) ...................................... 18

*Libbey Inc. v. Factory Mut. Ins. Co.*,
  2007 U.S. Dist. LEXIS 45160 (N.D. Ohio June 21, 2007) .......................................... 12

*Lindley v. Life Investors Ins. Co. of Am.*,
  2009 U.S. Dist. LEXIS 61175 (N.D. Okla. July 17, 2009) .......................................... 13

*Livaditis v. Am. Cas. Co. of Reading, PA*, 160 S.E.2d 449 (Ga. App. 1968) ............................... 24

*Max True Plastering Co. v. U.S. Fidelity and Guar. Co.*, 912 P.2d 861 (Okla. 1996) ...................... 8

*McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583 (Okla. 1981) ............................................. 18

*Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*,
  409 F.3d 342 (6th Cir. 2005) ...................................................................... 14

*Moulder v. State Farm Fire & Cas. Co.*,
  No. CIV-10-230-RAW, *slip op.* (E.D. Okla. Oct. 20, 2010) .................................... 10, 18, 20, 24, 25

*Omnibank Parker Rd., N.A. v. Employers Ins. of Wausau*,
  961 F.2d 1521 (10th Cir. 1992) .................................................................. 11

*Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431 (10th Cir. 1993) ................................... 18, 22, 23

*Pitman v. Blue Cross and Blue Shield of Okla.*, 217 F.3d 1291 (10th Cir. 2000) ........................... 8

*Red Panther Chem. Co. v. Ins. Co. of the State of Penn.*,
  43 F.3d 514 (10th Cir. 1994) .................................................................... 8

*Reliance Ins. Co. v. Copper/T. Smith Corp.*,
  2001 U.S. Dist. LEXIS 6424 (S.D. Ala. Apr. 24, 2001) .......................................... 15

*Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870 (10th Cir. 2006) ....................................... 22

*Spears v. Shelter Mut. Ins., Co.*, 73 P.3d 865 (Okla. 2003) ......................................... 8

*St. Paul Fire & Marine Ins. Co. v. Protection Mut. Ins. Co.*,
  664 F. Supp. 328 (N.D. Ill. 1987) .............................................................. 17

*Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*,
  579 F.2d 561 (10th Cir. 1978) .................................................................. 10, 16

*Trade Arbed, Inc. v. M/V Swallow*, 688 F. Supp. 1095 (E.D. La. 1988)..............................................16

*Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968).............................17

*Willis v. Midland Risk Ins. Co.*, 42 F.3d 607 (10th Cir. 1994)...............................................................22

*Yousuf v. Cohlmia*, 718 F. Supp. 2d 1279 (N.D. Okla. 2010) ..................................................................8

## Statutes:

15 O.S. § 157  .....................................................................................................................................................

## Other Sources:

AMERICAN HERITAGE DICTIONARY: SECOND COLLEGE ED. 387, 765 (1991) .......................................11, 15

BLACK'S LAW DICTIONARY 1731 (9th ed. 2009) .............................................................................................13

COUCH ON INSURANCE 3D, *Property Insurance: Forces of Nature* § 153:90 .......................................11

The Groffs hereby respond to State Farm's Motion for Summary Judgment [Doc. 42]:

## I.  INTRODUCTION

In September 2009, the Groffs learned that their tenant and her friends were using and manufacturing methamphetamine inside their rent house in Henryetta, OK. The Henryetta Police seized methamphetamine, chemicals, smoking pipes and lab materials, including a hydrochloric acid generator. After local police removed the criminals and their lab, the Groffs found pitted and corroded metal fixtures, peeling paint, holes in the walls, large scrapes, broken windows and doors, junk and debris strewn about, and other damage. The home looked "like new" just a few months earlier.

During the manufacturing process, the tenants released hydrochloric acid gas into the Groffs' home. This corrosive gas permeated the home, leaving behind prematurely pitted and corroded metal fixates and surfaces. While the methamphetamine manufacture appears to have been restricted to the master bathroom on the west end of the home, the hydrochloric acid has corroded metal fixtures throughout the home.

On September 21, 2009, the Groffs called their State Farm agent, who submitted a vandalism claim to State Farm. Upon hearing that the claim involved the manufacture of methamphetamine, State Farm immediately told Todd Groff that the policy would not cover the claim because it involved contamination. State Farm, however, wanted to inspect the house to see if there was any evidence of fire or explosion, determine the extent of vandalism, and note if there was any affected property under Coverage B for personal property. State Farm sent Jim DeTello out to the home to investigate the loss. For Coverage A, DeTello noted corrosion to metal fixtures in the master bathroom, but because there was no evidence of fire or explosion, he informed Mr. Groff that there was no coverage. DeTello noted in the claim log that the vandalism damage was nothing out of the ordinary. He noted nothing about the Groffs' personal property under Coverage B.

1

Following DeTello's log entry, on October 1, 2009, claims representative Mark McLemore issued a letter denying the Groffs' claim for loss. The letter stated that the damage to the home was the result of "contamination." State Farm also included a litany of other exclusions, including wear, tear, marring, scratching, deterioration, rust, mold, dry rot, conduct of persons, and inadequate maintenance. The Groffs appealed to State Farm to explain its logic, and reconsider its decision. After State Farm refused, the Groffs sought assistance from the Oklahoma Insurance Commissioner. After providing State Farm with a draft Petition the Groffs intended to file to address State Farm's bad faith, State Farm filed for declaratory judgment in Case No. CIV-10-171-SPS.

In the declaratory judgment action, State Farm moved for summary judgment, arguing that there is no coverage for the Groffs' loss because of exclusions (i) ("wear, tear, marring, scratching, deterioration, inherent vice, latent defect, and mechanical breakdown"), (j) ("rust, mold or wet or dry rot") and (k) ("contamination"). *CIV-10-171-SPS, Doc. 36 at 1, 2, 3, 7, 8, 18 and 21.* The Groffs argued the contamination exclusion did not bar coverage under the efficient proximate cause doctrine, and the other cited exclusions did not apply to bar coverage. *Id., Doc 50.* State Farm replied, arguing again the loss was barred by exclusions (i), (j) and (k). *Id., Doc. 59 at 6.* This Court granted in part and denied in part State Farm's motion. *Id., Doc. 69.* While this Court ruled that much of the loss was not covered due to exclusion (k), it ruled there are "questions of fact as to coverage for other items of loss, *e. g.,* holes in walls or doors, broken windows and corrosion, and State Farm is not entitled to judgment as a matter of law in this regard." *Id., Doc. 69 at 7.*

State Farm again moves the Court to rule as a matter of law that the policy does not provide coverage for corrosion and other damage. State Farm rehashes its same argument that it put forth in its motion for summary judgment in the declaratory judgment action:

that the exclusions (i) and (j) bar coverage for the corrosion and other tenant-caused damage.  State Farm is essentially seeking reconsideration of this Court's prior ruling.

Regardless, as shown below, exclusions (i) and (j) do not bar coverage, as those terms were not intended to apply to the type of damage at issue in this lawsuit.  State Farm's all-risk policy does not exclude coverage for corrosion which resulted from a tenant's release of hydrochloric acid during the manufacture of methamphetamine.  Thus, State Farm is not entitled to summary judgment as to coverage for corrosion damage or other tenant-caused damage.

Finally, State Farm contends that it is entitled to summary judgment on the Groffs' bad faith claim because (1) there is no coverage for the loss, and without coverage, there is no bad faith; (2) the Groffs never pursued a claim for vandalism; (3) State Farm was mistaken about the Groffs' pursuit of a claim for vandalism; (4) the vandalism claim does not exceed the deductible; and (5) there is a legitimate dispute whether coverage exists.

As more fully shown below, a jury must decide whether the following evidence is sufficient to award bad faith damages:

- State Farm's policy does not clearly exclude the corrosion in the Groffs' home, thus, the loss is covered under the ensuing loss clause.  It was unreasonable for State Farm to rely on inapplicable exclusion (i) to deny coverage for corrosion.
- The evidence shows that State Farm knew the Groffs were pursuing a vandalism claim (which exceeds the deductible), but State Farm wrongfully denied the claim and withheld payment based on exclusion (i).
- State Farm acted in bad faith by failing to timely and adequately investigate the Groffs' claimed loss, when an adequate investigation would have revealed covered losses.  It is bad faith for State Farm to wait over two years to evaluate the cost to remediate the vandalism damage.  Further, State Farm has failed to investigate the extent of corrosion, even where the Groffs have presented evidence that the home is suffering from extensive corrosion.

3

- State Farm failed to offer or pay benefits owed for damaged personal property (refrigerator and stove), debris removal and lost rents, the losses of which are not limited by the contamination exclusion.
- State Farm acted in bad faith by including certain exclusionary terms, *e.g.*, inadequate maintenance, in its denial letter with the hope that it "might" apply even where there was no factual basis to rely on the exclusion.

## II.    RESPONSE TO STATE FARM'S STATEMENT OF FACTS

The Groffs respond to State Farm's "Statement of Material Facts" as follows:

1.    Disputed. State Farm does not quote the Policy accurately, and the Policy provides additional coverage for Loss of Rents for the fair rental value for 12 months; debris removal; and inflation. *Policy 96-EQ-8192-5, at Renewal Certificate; p. 3, p. 5, DEBRIS REMOVAL ENDORSEMENT FE-7540, attached as Ex. 1.*

2.    Disputed. The Groffs reported a claim to their State Farm agent on September 21, 2009, for damages to their home. However, the claim was made for vandalism, which included holes in walls, broken doors and windows, junk strewn throughout the home, corroded metal fixtures and physical damage from methamphetamine manufacture and use. *Fire Claim Service Record, p. 1, attached as Ex. 2; Declaration of Todd Groff, attached as Ex. 3.* The Groffs admit the same day State Farm received the claim, a claims representative immediately told them there was no coverage because of the contamination exclusion. *Ex. 2, p. 8; Ex. 3.* Mr. Groff admits he was told the house would need to be torn down.

3.    These facts are immaterial to the issues raised by State Farm's motion.

4. Mr. Groff admits he observed corrosion in the bathroom.  The Groffs admit the occupants manufactured methamphetamine with a "shake 'n bake" method, and that the police seized lab materials, including a hydrogen chloride generator.  *Affidavit of Blake Frost, attached as Ex. 4.* The remaining "facts" are immaterial to State Farm's motion.

5.    Disputed in part. The Groffs admit DeTello came to the home on September 22, 2009 to look for evidence of fire or explosion, and to determine the extent of the tenant's

4

vandalism. *Ex. 2, p. 5; Ex. 3.*  The Groffs admit DeTello saw corrosion to the light, plumbing fixtures and bath accessories, and that the fixtures were about a year old. The Groffs admit DeTello stated there was no coverage because of the contamination exclusion, but the Groffs deny that they understood why. *Ex. 3.* DeTello observed other damage that was not normal wear and tear, or at least he should have.  *Ex. 3, including photographs.*

6.  Disputed in part.  The Groffs admit DeTello called to reiterate the claim was not covered, and Matt McLemore sent the denial letter stating claim was not covered because of exclusions (i), (j), (k) and (3)(b)(4), but without explanation how they apply.  However, the Groffs deny DeTello adequately explained the reasons for the denial. *Ex. 3.*

7.  Admitted.

8.  The Groffs sent the letter dated February 26, 2010, which speaks for itself.

9. Admitted, in that the post-denial letter includes the quoted language.

10. The Groffs admit State Farm sued them to determine coverage for the claim.

11.  Admitted.   The interrogatory suggests it seeks information about physical evidence.  The Groffs had no physical evidence indicating the cause of the other damage.

12.  The Groffs admit when the claim was reported, they told their agent, Brent Jensen, their home had been vandalized, and Jensen submitted a vandalism claim. *Ex. 3.*  Mr. Groff never suggested to DeTello he was not pursuing a claim for vandalism. *Ex. 3.*

13.  Mr. Groff admits he testified consistent with the description, including the statement that he usually uses the tenant's deposit to repair damage.  However, the deposit is only used to repair damage when the tenant fulfills the terms of the lease. *Ex. 3.* Where, as here, a tenant breaches the terms of the lease agreement, Mr. Groff's practice is to retain the deposit to cover any lost rents due to the breach.  *Ex. 3.*

14. The Groffs admit that DeTello finally evaluated the extent of the damage to the Groffs' home over two years after they made their claim to State Farm, and that he believes

5

that the damage he observed does not exceed the Groffs' deductible. *Ex. 3.* However, it will cost $1,815.00 for Weatherford Construction to repair the broken windows, door and wall, and remove all of the junk and garbage left behind. *Ex. 3.* The Groffs' deductible is $1,000.00. *Ex. 3.* The Groffs also admit DeTello has the unreasonable belief that the extensive damage is "normal wear and tear."

## III.    ADDITIONAL FACTS DEFEATING STATE FARM'S MOTION

1. Just prior to Casey Goike taking possession of the home on May 15, 2009, the Groffs had completed an extensive remodel of the home. *Ex. 3.* The cost of the remodel was over $26,000.00. Weatherford Construction installed many new metal fixtures and parts, including mirrors, light fixtures and fans, electrical components, refrigerator and stove, HVAC system, plumbing fixtures and lines, doors, and door and cabinet hardware. All of these items still looked new when Ms. Goike too possession of the home. *Ex. 3.*

2. On September 20, 2009, the Groffs learned that their home had been vandalized by Ms. Goike and her friends. *Ex. 3.* They had manufactured methamphetamine in the home, and used a hydrochloric acid generator. *Ex. 3; Declaration of William R. Coleman, attached as Ex. 5.* The criminals released hydrochloric acid, which damaged the home and the Groffs' personal property inside the home. *Ex. 3; Ex. 5.* Metal fixtures and surfaces in the Groffs' home have suffered extensive corrosion from contact with the hydrochloric acid. *Ex. 3 (photos); Ex. 5; March 16, 2010 letter from State Farm, attached as Ex. 6.* The criminals also broke two windows, knocked a huge hole in a wall, scraped walls, broke a door knob off and left the home full of junk and garbage. *Ex. 3 (photos).*

2. The Groffs submitted one claim to State Farm on September 21, 2009 for vandalism damage. *Ex. 2, p. 1; Ex. 3.* The same day, Jim Polovich noted in the claim log that "We need to determine what type/extent of vandalism is involved." *Ex. 2 at 7.* The

following day, Gail Bramble entered into the claim log that she spoke to Mr. Groff who indicated that there was vandalism in the home. *Ex. 2 at 7.*

3. DeTello was directed to go to the Groffs' rental home to look for evidence of fire or explosion, and to determine the extent of the vandalism and whether there was any personal property affected under Coverage B. *Ex. 2 at 6-7.* On September 22, 2009, DeTello inspected the Groffs' home, but failed to determine whether the Groffs had any personal property that was affected. *Ex. 2 at 5; Ex. 3.* The Groffs had a new refrigerator and stove, both of which have suffered pitting and corrosion damage. *Ex. 3.*

4. On October 1, 2009, Matt McLemore, sent a letter denying the claim. *Ex. 3; Denial Letter, attached as Ex. 7.* The letter states the Groffs' loss was not covered because of the following exclusions for Coverages A and B: "wear, tear, marring, scratching, deterioration, inherent vice, latent defect, and mechanical breakdown;" "rust, mold or wet or dry rot;" "conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;" and "defect, weakness, inadequacy, fault or unsoundness in ... maintenance ... of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**." *Id.* The letter did not address Coverage C or Additional Coverages. *Id.*

5. State Farm' s Policy provides "all-risk" coverage. *Ex. 1, p. 5.* The Policy states under "COVERAGE C – LOSS OF RENTS" that "If a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental but not exceeding 12 consecutive months from the date of the loss." *Ex. 1 at 3.* The Groffs' rental home has been uninhabitable because of the tenant-caused damage since September 2009. *Ex. 3.* The market rental value of the home is $650.00 per month. *Ex. 3.*

7

6.  The Policy also provides coverage for Debris Removal under the Debris Removal Endorsement to Additional Coverages: "We will pay the reasonable expenses you incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss." *Ex. 1 at 3, Endorsement FE-7540.*  The Groffs must remove all of the debris from the rental home, including the corroded metal surfaces, junk and garbage, broken windows and doors, unusable appliances, and all of the home surfaces that are not able to be cleaned, and are thus, not suitable for further use. *Ex. 3.*

7.  State Farm refused to renew the Policy due to the claim.  *Ex. 3; Non-renewal Letter, attached as Ex. 8.* The Groffs now have to pay higher insurance premiums. *Ex. 3.*

## IV.    PRINCIPLES OF INSURANCE POLICY INTERPRETATION.

The interpretation of the Policy is guided by the following principles: (1) ambiguities are resolved in the insured's favor; (2) words of inclusion are liberally applied and words of exclusion are strictly construed; (3) a fair interpretation is favored; (4) the terms are construed to give effect to the parties' intentions; (5) the scope of coverage is determined with reference to extrinsic facts; and (6) words are given their plain meaning. *See Max True Plastering Co. v. U.S. Fidelity and Guar. Co.*, 912 P.2d 861, 865 (Okla. 1996). Once an insured shows the loss falls under the coverage grant, the insurer must show the "loss falls within an exclusionary clause of the policy" in order to escape liability. *Pitman v. Blue Cross and Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000). To limit its liability, an insurer "must employ language that clearly and distinctly reveals its stated purpose." *Spears v. Shelter Mut. Ins., Co.*, 73 P.3d 865, 868 (Okla. 2003).  If a policy is "uncertain, or the terms can bear more than one reasonable interpretation, the term[s] [are] ambiguous and must be interpreted most favorably to the insured." *Yousuf v. Cohlmia*, 718 F. Supp. 2d 1279, 1285 (N.D. Okla. 2010) (citing *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991)). *See Red Panther Chem. Co. v. Ins. Co. of the State of Penn.*, 43 F.3d

8

514, 517 (10th Cir. 1994) ("[T]he exclusion can be considered unambiguous only if one can read its text in conjunction with the facts ... and reach the conclusion the claim falls within the exclusion's terms. If there are two reasonable interpretations of the exclusion, then it is considered ambiguous."). Ambiguity is determined from the standpoint of a layperson. *See Haworth v. Jantzen*, 172 P.3d 193, 196 (Okla. 2006).

## V.   STATE FARM IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF COVERAGE FOR CORROSION.

### a. This Court has already ruled that State Farm is <u>not</u> entitled to judgment as a matter of law on the issue of coverage for corrosion.

State Farm puts forth the same argument—that corrosion is barred under the exclusions for deterioration, marring and rust—here as it did in its motion for summary judgment in the declaratory judgment action. This Court, however, has already rejected State Farm's argument. State Farm moved for summary judgment, arguing that there is no coverage for the Groffs' loss because "[t]he policy contains unambiguous exclusions for contamination, wear, tear, marring, scratching, deterioration and rust." *See 6:10-cv-00171-SPS [Doc. 36]* at 1, 2, 3, 7, 8, 18 and 21. The Groffs responded that some of their loss consisted of corrosion and vandalism, and that the cited exclusions did not apply. *See 6:10-cv-00171-SPS [Doc 50]*. State Farm replied that the "the damage described by the [Groffs] is encompassed within the ambit of the cited exclusions for contamination, wear, tear, marring, scratching, deterioration, inherent vice, latent defect, mechanical breakdown, rust, or wet or dry rot." *See 6:10-cv-00171-SPS [Doc. 59]* at 6.

On September 7, 2011, this Court entered and Opinion and Order, granting in part and denying in part, State Farm's motion for summary judgment. *See 6:10-cv-00171-SPS [Doc. 69]*. This Court ruled that some of the Groffs' loss was not contamination and that State Farm was not entitled to summary judgment on such loss. *Id. at 3*. Specifically, this Court ruled that coverage may be available "under the last sentence of Paragraph 1 of

9

Section I -- Losses Not Insured, which provides that 'we do insure for any ensuing loss from a. through n. [including 'k. contamination'] unless the loss is itself a Loss Not Insured by this Section.'" *Id.* at 7 (citing *Moulder v. State Farm Fire & Cas. Co.,* No. CIV-10-230-RAW, *slip op.* at 9 (E.D. Okla. Oct. 20, 2010) ("Defendant already paid the cost to have Plaintiff's windows replaced because Defendant realized that the damage to the windows [etching caused by the contaminating fluorine] was the result of, but did not consist of contamination, and so was not excluded under the Losses Not Insured section."). As this Court ruled, "corrosion is not contamination, and it is not otherwise specifically excluded under the policy." *Id.* at 6-7. This Court further ruled that there are "questions of fact as to coverage for other items of loss, *e. g.,* holes in walls or doors, broken windows and corrosion, and State Farm is not entitled to judgment as a matter of law in this regard." *Id.* at 7. State Farm is not entitled to summary judgment on the issue of coverage for corrosion loss in this action for the same reasons set forth in this Court's prior Opinion and Order.[1]

### b. Exclusions (i) and (j) do not bar coverage for the corrosion damage at issue.

The Policy's exclusion (i) (for "wear, tear, marring, scratching, deterioration, inherent vice, latent defect, and mechanical breakdown") and exclusion (j) (for "rust, mold or wet or dry rot") do not defeat coverage for the corrosion damage. State Farm sold the Groffs an all-risk insurance policy. This "creat[es] a special type of insurance extending to risks not usually contemplated, and recovery under the policy will generally be allowed ... unless the policy contains a specific provision expressly excluding the loss from coverage." *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 564

---

[1] The Groffs submit that the entire loss would also be covered under the efficient proximate cause rule since the efficient proximate cause of the loss was the tenant's manufacture of methamphetamine, a covered peril. In support, the Groffs adopt and incorporate by reference their Response in [Doc. 50] to State Farm's Motion for Summary Judgment in the declaratory judgment action, and their Motion to Reconsider [Doc. 92] and Reply Brief in support [Doc. 97].

10

(10th Cir. 1978). *See also Omnibank Parker Rd., N.A. v. Employers Ins. of Wausau*, 961 F.2d 1521, 1523 (10th Cir. 1992) ("Exclusionary clauses must be clear and specific.").

Exclusion (i) ("wear, tear, marring, scratching, deterioration, inherent vice, latent defect, and mechanical breakdown") does not apply to the Groffs' corrosion loss. Exclusion (i) is meant to remove from coverage losses caused by natural processes, inevitable degradation or depreciation from the normal use or life of an object. It is not intended to apply to rapidly occurring damage caused by the criminal acts of a third-party.

State Farm relies on the broad dictionary definition of "deterioration," and seeks to apply it out of the context in which it was intended. "Deteriorate" is defined as "[t]o lower in quality, character or value. To degenerate." AMERICAN HERITAGE DICTIONARY: SECOND COLLEGE ED. 387 (1991). This definition is not very helpful since *every* property loss necessarily includes a lowering of the quality, character or value of the insured property. However, the term "degenerate" implies a gradual natural process. *See id.* at 376 (defining "degenerate" as "[t]o decline from a former or original state; deteriorate: *old water pipes degenerating with age.*"). As one respected treatise puts it, "damage from deterioration, in order to be excluded must result from a fixed attribute of the damaged property." COUCH ON INSURANCE 3D, *Property Insurance: Forces of Nature* § 153:90. It does not apply to damage caused by a tenant's release of hydrochloric acid during methamphetamine manufacture.

Instructive is *Cavalier Group v. Strescon Indus., Inc.*, 782 F. Supp. 946 (D. Del. 1992), where balconies on the insured premises suffered damage from the freeze-thaw effect in conjunction with a faulty design. The insurer argued that the damaged balconies had deteriorated and, thus, were not covered because of an exclusion for "deterioration, inherent vice, latent defect, wear and tear; rust or corrosion; mold, mildew, wet or dry rot ...." *Id.* at 950. The *Cavalier* court noted a "distinction between natural and nonnatural causes of deterioration," and that there was evidence that the "balconies worsened not

11

from ordinary and natural causes but in a faster than anticipated time frame due to negligent acts within a third parties exclusive control." *Id.* at 955.  In finding deterioration to be ambiguous and denying the insurer's motion for summary judgment, the court stated:

> Plaintiff asserts that since "deterioration" is not defined in the policy and no distinction is made between naturally and abnormally caused deterioration, it is reasonable to associate the term with natural events, not deterioration caused by abnormal events, such as design defects and a freeze/thaw cycle. Plaintiff's position is consistent not only with Black's and Webster's definitions, but also with the policy itself. In the policy "deterioration" was listed in conjunction with "wear and tear," "latent defect," and "inherent vice." All these listed categories relate to normal and inevitable occurrences, not occurrences like negligence that are within someone else's control.

*Id.* at 956 (footnote omitted) (finding "deterioration" to be ambiguous and denying summary judgment).  Likewise, in *Libbey Inc. v. Factory Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 45160 (N.D. Ohio June 21, 2007), the court had to determine whether an exclusion for "deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect" barred coverage for damage to glass forming machines from the presence of excess calcium resulting from misformulated oil.  The court looked to *Cavalier*'s interpretation of "deterioration" to mean "the gradual worsening of an object due to natural causes" and that the scope of the word is limited to "normal and inevitable occurrences." *Id.* at *12.  The *Libbey* court noted that in the policy at issue, "'deterioration' was listed in conjunction with 'wear and tear,' 'latent defect,' and 'inherent vice'" and concluded that the term was "at least ambiguous, and one reasonable interpretation of the word requires a gradual worsening due to natural causes." *Id.* at **12-13.  Because the "exclusion implies exclusion of normal and inevitable occurrences only," and the damage was "accelerated" and "caused by non-natural causes," the court interpreted the term in favor of coverage. *Id.*

Other courts have determined that exclusions which include the terms "wear and tear" and "deterioration" and "marring" only apply to property damage "resulting from the

reasonable and normal use of an object over time." *Ehsan v. Ericson Agency*, 2003 Conn. Super. LEXIS 1969 *48 n. 18 (Conn. Super. Ct. July 3, 2003) ("Given the context of ['marring'] in this policy, adjacent to the terms 'wear and tear' and 'deterioration,' the term is meant to include that marring of appearance caused by wear and tear or deterioration resulting from the reasonable and normal use of an object over time."); *see also., e.g., Berman v. Amex Assur. Co.*, 2011 U.S. Dist. LEXIS 23716 *25 (C.D. Cal. Feb. 22, 2011) ("marring" exclusion "could be reasonably interpreted to apply only to gradual damage or scratching and marring that the insured should otherwise expect" to occur "gradually over an extended period of time."); *Gerawan Farming Ptnrs., Inc. v. Westchester Surplus Lines Ins. Co.*, 2008 U.S. Dist. LEXIS 4511 *60 (E.D. Cal. Jan. 4, 2008) ("wear and tear," "deterioration," "marring," and "mechanical breakdown" "are all perils that one may ordinarily think of as occurring naturally over time as property is used."); *242-44 E. 77th St., LLC v. Greater N.Y. Mut. Ins. Co.*, 31 A.D.3d 100, 103 (N.Y. App. Div. 2006) ("wear and tear," "corrosion," "decay," "deterioration," etc. all "share a common characteristic: they are naturally occurring events."); BLACK'S LAW DICTIONARY 1731 (9th ed. 2009) (defining "wear and tear" as "[d]eterioration caused by ordinary use; the depreciation of property resulting from its reasonable use").   Exclusions for "deterioration," "wear and tear," "inherent vice" and the like to do not apply to fortuitous losses caused by the criminal acts of a third party. "Although this precedent is from jurisdictions other than Oklahoma, it is relevant to show that '[deterioration]' may be subject to more than one reasonable interpretation." *Lindley v. Life Investors Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 61175 *22 (N.D. Okla. July 17, 2009).

State Farm did <u>not</u> draft an <u>independent</u> exclusion for "deterioration" in its all-risk policy.  Instead, it drafted exclusion (i), which applies to "wear, tear, marring, scratching, deterioration, inherent vice, latent defect, and mechanical breakdown." Exclusion (i) must be read as a whole.  "Deterioration" must be construed by reference to the other terms with

which it is associated. *See Broadway Clinic v. Liberty Mut. Ins. Co.*, 139 P.3d 873, 878 (Okla. 2006) ("the meaning of an unclear or ambiguous word or phrase should be determined by the words immediately surrounding it."). Exclusion (i) is intended to avoid converting the policy into a home maintenance agreement, as the types of degeneration listed "damage or perils that can be expected to occur naturally over time as property is used." *Gerawan Farming Ptnrs.*, 2008 U.S. Dist. LEXIS 4511 *62. These impairments are not fortuitous losses, the types of which all-risk property insurance is intended to cover. *See Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, 409 F.3d 342, 350 (6th Cir. 2005) (all-risk policies are intended to cover fortuitous and external events, not inevitable losses or those from inherent characteristics of property).

State Farm contends that "corrosion" is encompassed by the broader term "deterioration." State Farm relies on *Brodkin v. State Farm Fire & Cas. Co.*, 217 Cal.App.3d 210 (1989), which involved corrosion to a concrete foundation from contact with naturally-corrosive. There, the court held that the corrosion damage was excluded by the deterioration exclusion. However, the court specifically noted that the "plain meaning of the exclusion is the insurer will not cover slow-moving disintegration or corrosion . . .." *Id.* at 217. Later cases have recognized that *Brodkin* treated "corrosion" as a form of "deterioration" precisely because the corrosion at issue was *natural and slow-moving. See, e.g., Berry v. Comm'l Union Ins. Co.*, 87 F.3d 387, 392 n. 9 (9th Cir. 1996) (corrosion was a covered loss and distinguishing *Brodkin* by stating "[w]e believe that deterioration of pipes caused by natural contact with the soil is wholly different from deterioration of pipes caused by the introduction of harmful chemicals."). *Brodkin*, which involved corrosion to a foundation from contact with a naturally corrosive soil over a long period of time, is

14

factually distinguishable.[2]   Further, if "deterioration" includes "corrosion," then the inclusion of "rust" (a form of corrosion) in exclusion (j) is rendered superfluous.  This is an impermissible result as "[t]he whole of a contract is to be taken together, so as to give effect to every part ...."  *Dodson v. St. Paul Ins. Co, Inc.*, 812 P.2d 372, 377 n. 11 (Okla. 1991) (quoting 15 O.S. § 157).   Because State Farm specifically listed rust as an exclusion, it follows it did not intend to exclude other forms of corrosion.

State Farm also contends that the damage to the metal fixtures and surfaces is "marring."  The definition of "mar" is "to damage or deface."  AMERICAN HERITAGE DICTIONARY at 765.  Like "deterioration," this exclusionary term is incredibly broad, and would apply to most property losses. Also like "deterioration," "marring" must be construed by reference to the other words embraced by exclusion (i).  The term "marring" as used in exclusion (i) is meant to apply to expected and normal damage to property over its lifetime.

State Farm argues that the pitting and corrosion is excluded as "rust" as that term is employed in exclusion (j), which applies to "rust, mold or wet or dry rot."  However, the Groffs have not made a claim to remedy the *surface* rust that appears on a few of the most heavily corroded metal fixtures.  Rust (oxidation) is a natural process that will inevitably occur when unprotected iron is exposed to oxygen and moisture.  The problem with State Farm's argument with respect to exclusion (j) is that the rust on the metal fixtures is neither the loss or the cause of the loss.  *See Ex. 5.*  The fixtures are not unusable or damaged because they have *surface* rust.  They were destroyed because they began to pit and corrode from exposure to hydrochloric acid.  *See Ex. 5.*  "[C]orrosion of the type

---

[2] *Reliance Ins. Co. v. Copper/T. Smith Corp.*, 2001 U.S. Dist. LEXIS 6424 (S.D. Ala. Apr. 24, 2001) is also unhelpful.  There, the court interpreted an exclusion for "gradual deterioration" with respect to a claim for damage to a crane when corroded bolts on another crane failed causing parts to fall.  The court determined that "gradual deterioration" encompassed the type of corrosion that caused the loss.  *Id.* at *7 (referencing terms such as "atrophy," "degrade" and "erode," which imply naturally occurring corrosion over a long period of time).  There is nothing gradual about the Groff's loss.

attributable to chlorides or other corrosive agents" is different from "atmospheric oxidation." *Trade Arbed, Inc. v. M/V Swallow*, 688 F. Supp. 1095, 1099 (E.D. La. 1988).  Rust that has begun to appear on a few of the metal items, but only because the protective finishes have been destroyed by contact with hydrochloric acid. *See Ex. 5.*  Exclusion (j), which bars coverage for "rust, mold or wet or dry rot," does not apply to the Groffs' loss.

Neither of the exclusions State Farm relies upon is applicable here to deny coverage for the pitting and corrosion to the metal surfaces in the Groffs' home.  State Farm agreed to provide coverage for all losses, *unless they are specifically excluded.*  In order for State Farm to escape coverage, the policy must contain "a specific provision expressly excluding the loss from coverage." *Texas Eastern Transmission Corp.*, 579 F.2d at 564.  *See also BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005) ("It is the insurer's responsibility to draft clear provisions of exclusion.").  The exclusions relied upon by State Farm do not expressly exclude the loss from coverage.  Therefore, State Farm's all-risk policy must be interpreted to cover the Groffs' loss for pitting and corrosion to the metal fixtures and surfaces in their rental home.  As this Court previously ruled, State Farm is not entitled to summary judgment on the corrosion loss.

## VI.    THE POLICY PROVIDES COVERAGE FOR DEBRIS REMOVAL.

There is an additional basis for coverage under the Policy for the items in the home that are unfit for use due to being exposed to toxic and corrosive chemicals.  Under the DEBRIS REMOVAL ENDORSEMENT FE-7540 to SECTION I – ADDITIONAL COVERAGES, State Farm agreed to "pay the reasonable expenses [the Groffs] incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss." *Ex. 1 at 3, Endorsement FE-7540.*  Where the "property damage plus debris removal expense exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense." *Id.*  Coverage for debris removal under the endorsement turns on

whether the **cause** of the loss is covered.  Here, as this Court has previously ruled, the "sole cause of the loss was the manufacturing of methamphetamine inside the rent house . . .." *CIV-10-171-SPS, Doc. 69 at p. 6.* Thus, under the endorsement, there is coverage available up to the policy limits plus an additional 5% for any "debris" that must be removed.

The Oklahoma Supreme Court interprets "debris" very broadly.  In Oklahoma, if covered property has been damaged "to the degree that it must be replaced, then the damaged portion is rubble or wreckage." *Branch v. Farmers Ins. Co.*, 55 P.3d 1023, 1027-1028 (Okla. 2002).  Such damaged property is considered "debris" for insurance purposes where that term is not further defined by the policy. *See id.* Here, State Farm and the Groffs agree that the rent house is unfit for use due to exposure to toxic and corrosive chemicals from the tenant's methamphetamine manufacture.  The exposed surfaces must be replaced as there are no standards in Oklahoma to determine what constitutes an acceptable remediation of a home exposed to chemicals during methamphetamine production. *Ex. 3; Deposition of Jim DeTello, 158:16 – 159:7, attached as Ex. 9.* Further, the metal surfaces in the home have shown pitting and corrosion due to exposure to hydrochloric acid, and these items must be replaced.[3]  Therefore, under *Branch*, these items are considered "debris" under the Policy. *See also St. Paul Fire & Marine Ins. Co. v. Protection Mut. Ins. Co.*, 664 F. Supp. 328, 334 (N.D. Ill. 1987) (noting that both insurers agreed that the "clean up of PCB contamination is covered under a debris removal clause," which provided for payment for the "expense of removal of material and debris of property damaged by an insured peril"); *Interstate Gourmet Coffee Roasters, Inc. v. Seaco Ins. Co.*, 794 N.E.2d 607, 612 (Mass. App. Ct. 2003) ("debris removal" provisions provided coverage to remove and dispose of

---

[3] The presence of toxic chemicals constitutes a direct physical loss. *See Farmers Ins. Co. v. Trutanich*, 858 P.2d 1332, 1335-1336 (Or. Ct. App. 1993) (pervasive odor from methamphetamine production was a physical loss to insured property) (citing *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (gasoline vapors in church were physical loss)).

contaminated coffee and clean the equipment in contaminated); *Lexington Ins. Co. v. Ryder System, Inc.*, 234 S.E.2d 839 (Ga. App. 1977) (escaped oil was deemed "debris" for purposes of "debris removal" coverage because it was no longer suitable for use).

Debris removal does <u>not</u> fall under Coverage A or Coverage B.  The exclusionary language in SECTION I – LOSSES NOT INSURED unambiguously applies only to Coverage A and Coverage B.  *See Moulder*, 6:10-cv-00230-RAW, at 9 ("[State Farm] should have also realized, however, that the Losses Not Insured section consisting of or directly and immediately caused by contamination only applies to Coverage A.  That section does not limit Plaintiff's coverage on personal property coverage under Coverage B, for which Plaintiff is insured for up to $97,8000.00.").  Since the *cause* of the loss is covered, there is coverage for the *removal* of damaged property even there is no coverage for *replacement*.

## VII.   SUMMARY JUDGMENT IS IMPROPER ON THE BAD FAITH CLAIM.

State Farm's bad faith conduct in handling the Groffs' claim must be addressed by a jury.  In Oklahoma, "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Christian v. Am. Home Assur. Co.*, 577 P.2d 899, 904 (Okla. 1977).  "The essence of an action for breach of the duty of good faith and fair dealing 'is the insurer's unreasonable, bad-faith conduct . . . and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *Badillo v. Mid Century, Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981)).  At the summary judgment stage, the court must construe all material facts in the insured's favor and determine "whether insurer's conduct may be reasonably perceived as tortious." *Oulds v. Principal Mut. Life Ins.*

18

*Co.*, 6 F.3d 1431, 1436-37 (10th Cir. 1993) (internal citations omitted).  Liability "may be shown without proving conduct on the part of an insurer that was intended to harm, injure or deceive its insured." *Badillo*, 121 P.3d at 1093 n.6.

Here, State Farm immediately set out to deny the entirety of the Groffs' claim under the contamination exclusion (k) without regard for any other damage not subject to the exclusion.  The Groffs submitted a claim for tenant-caused vandalism, which included broken windows and doors, a large hole in a wall, large scrapes, junk and garbage strewn about the house, and pitted and corroded to metal fixtures.  *Ex. 3.* The same day the claim was submitted, and prior to inspecting the home for damage, State Farm representative Gail Bramble told Mr. Groff that contamination is not covered under the policy.  *Ex. 2 at 8; Ex. 3.*   Later, State Farm decided to inspect the home to determine the type and extent of vandalism.  *Ex. 2 at 6-7.*  The next day, Bramble called Mr. Groff for more information, and he described some of the vandalism and corrosion in the home.  *Ex. 2 at 6-7; Ex. 3.*

On September 22, 2009, DeTello went to the home to look for evidence of fire and explosion and to determine the extent of vandalism to the home.  *Ex. 2 at 5-7; Ex. 3.*  Mr. Groff showed DeTello the master bathroom where the lab was located.  Mr. Groff showed DeTello corrosion and pitting on the plumbing fixtures, lights and vent in the master bathroom.  *Ex. 3.* DeTello took photographs of the home, including the corroded metal fixtures in the master bathroom, the junk strewn around the home, and the large hole in one of the walls.  *Ex. 3.*  DeTello advised Mr. Groff that the claim would not be covered because it involved contamination.   *Ex. 3.* DeTello never advised Mr. Groff that the corrosion would not be covered because of some other exclusion.  DeTello knew there was visible pitting and corrosion in the home as the result of the tenant's manufacture of methamphetamine, but he determined that it was not covered because of the contamination exclusion. *Ex. 3.* After the inspection, DeTello reported back that his

19

inspection revealed "no damage to the home beyond normal items that generally have to be replaced/repaired when a tenant moves." *Ex. 2 at 5.* On October 1, 2009, State Farm denied the Groffs' claim, again stating that the damage was not covered because it was "the result of contamination." *Ex. 7.* State Farm cited exclusions (i), (j) and (k) in support of its refusal to pay the Groffs' claim. *Ex. 7.*

State Farm argues that it cannot be liable for bad faith because there is no coverage for the Groffs' loss, or at least there was a "legitimate dispute" regarding coverage for the claim.  As demonstrated above, exclusions (i) and (j) do not bar coverage for pitted and corroded metal surfaces; broken windows, doors and walls; or the cost to rid the home of junk and garbage.  Under the all-risk policy, there is coverage for these losses.  It is patently unreasonable for an insurer to apply an exclusion for "wear, tear, marring, scratching, deterioration, inherent vice, latent defect, and mechanical breakdown" to a claim that involves damage caused by a third-party's acts.  Exclusion (i) is intended to remove from coverage losses caused by natural processes and inevitable degradation, both of which are expected to occur over the normal life of an object.  Even if exclusion (i) is ambiguous, State Farm was required to resolve the ambiguity in the Groffs' favor, not its own.  In *Danny Moulder v. State Farm Fire and Cas. Co.*, 6:10-cv-00230-RAW, State Farm acknowledged that damage that results or ensues from contamination is a covered loss under the ensuing loss provision.  There is no difference between etched windows resulting from the release of from hydrofluoric acid and pitted and corroded metal resulting from the release of hydrochloric acid.  Under State Farm's argument in this case, both instances would be considered "marring" or "deterioration."  However, State Farm acted reasonably and in good faith with respect to the resulting damage in *Moulder*, and paid the claim.  Here, State Farm refuses to acknowledge the inapplicability of exclusion (i).

It was also unreasonable for State Farm to look to exclusion (j), which excludes from coverage losses caused by "rust, mold or wet or dry rot."  Some of the metal fixtures have developed surface rust after their finishes had been pitted and corroded by hydrochloric acid.  *Ex. 3; Ex. 5.*  This does not mean that State Farm can just deny the claim because rust is present.   The Groffs never asked for State Farm to clean the rust from the already damaged fixtures.  *Ex. 3.*  State farm never investigated to determine why the finish of the metal fixtures was pitted, or why they had developed surface rust.   Had State Farm investigated the loss in good faith, it would have determined that the exposure to hydrochloric acid had eaten away the protective finish, and allowed the exposed metal to develop on some of the fixtures. State Farm was set on denying the Groffs' claim.

Further evidence of State Farm's intent to find every possible way to deny the claim is the reliance on two exclusions under Section I – Losses Not Insured, 3.  McLemore informed the Groffs that their claim was not covered under exclusion (a) because it was caused by "conduct, act, failure to act, or decision" of any person.  McLemore admitted in his deposition that he did not even know what this exclusion meant, but he included it anyway.  *Deposition of Matt Mclemore, 90:19 – 94:17, attached as Ex. 10.*  He now claims that it was just a mistake.  *Id.*  But this excuse is undermined by the fact that he also included exclusion (b)(4) as a basis to deny the Groffs' claim even though he admitted in deposition that there were no existing facts or evidence to suggest the Groffs' loss was caused by inadequate "maintenance."   McLemore did not even remember why he relied on the exclusion.  *Ex. 10, 94:18 – 96:6.*  He thinks it may have been a fall-back just in case the Groffs failed to do something in the future to prevent the spread of contamination.  *Id.* This shows that State Farm was looking for any reason it could find to deny the Groffs' claim in whole. It even stooped to the level of relying on exclusions that might apply in the future only if certain events occur.  If that is a reasonable approach in handling claims, then an insurer

21

can deny every claim because there is a possibility that some event in the future would render an exclusion applicable.   State Farm's reliance on the exclusion for inadequate maintenance is plain bad faith.

Moreover, the existence of a legitimate dispute does not, by itself, resolve a bad faith claim. Rather, "it shifts the burden to the insured to present additional evidence of bad faith." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006).  When determining whether to pay a claim, the insurer must conduct an investigation that is "reasonably appropriate under the circumstances." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994).  The insurer's actions are reviewed in light of the facts it knew or should have known at the time it was asked to perform under the contract. *Oulds*, 6 F.3d at 1437. "If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable." *Willis*, 42 F.3d at 612.  An insured shows evidence of bad faith where "(1) the manner of [the insurer's] investigation hints at a sham defense or otherwise suggests that material facts were overlooked, or (2) the insurer intentionally disregarded undisputed facts supporting the insured's claim." *Sims*, 469 F.3d at 891.  Both types of bad faith are present here.

DeTello noted that some of the metal fixtures were corroded in the master bathroom, but took no further steps to look for pitting or corrosion elsewhere. *Ex. 2 at 5; Ex. 3.* There was visible pitting and damage to the paint on HVAC vents in the master bedroom and utility room. *Ex. 3; Ex. 5.*  In the kitchen, the stove and refrigerator showed signs of corrosion. *Ex. 3.*  DeTello would have seen this damage had he looked.  However, once he saw that there was no fire or explosion, he was finished investigating. *Ex. 3.* DeTello determined that the claim involved contamination and ordinary wear and tear, so he stopped his investigation.  Had State Farm investigated properly, it would have seen that the hydrochloric acid released into the home had traveled through the HVAC system, and

that it spread to other areas of the home.   *See. Ex. 3; Ex. 5.*  State Farm would have needed to inspect other metal surfaces and fixtures for chloride pitting and corrosion, or have an expert do so.  *See Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, 1999 U.S. Dist. LEXIS 11873 *16 (D. Or. Aug. 4, 1999) (damage from methamphetamine manufacture "can occur at the molecular level and can be undetectable in a cursory inspection.") (citing *Trutanich*, 858 P.2d 1332).   Instead, the Groffs were forced to hire a metallurgist to confirm the hydrochloric acid damage to the metal fixtures in areas of the home far from the master bathroom.  *Ex. 3; Ex. 5.*  State Farm did not investigate the pitting and corrosion damage because it was set on denying the claim outright under the contamination exclusion.

State Farm also failed to adequately investigate and evaluate the claim as it related to other non-chemical damage. State Farm brushed it off as ordinary wear and tear, and never prepared an estimate or evaluated the amount.  Instead, State Farm denied the claim outright. Over two years after its denial letter was issued, State Farm finally sent DeTello to estimate the amount of damage. *Ex. 3.*  This was obviously done to fabricate a legitimate dispute over the deductible amount. But, State Farm cannot cure its bad faith by evaluating the damages after it already denied the claim.  *See Oulds*, 6 F.3d at 1437 (insurer's actions are reviewed in light of facts it knew or should have known at the time it was asked to perform under the contract).   Regardless, the damage to the walls, doors, windows, etc., exceeds the deductible.  *Ex. 3; Weatherford Construction Estimate, attached as Exhibit 11.* State Farm cannot legitimately rely on some general statement from its claim investigator that the damage does not exceed the deductible.

State Farm cannot escape liability for bad faith by claiming that the Groffs never pursued a claim for non-chemical damage, or that they abandoned the claim.   DeTello states that he understood from his discussion with Mr. Groff that he was not pursuing such a claim, but Mr. Groff *never* said anything to that effect.  *Ex. 3.*  DeTello noted in the claim

file that the damage was nothing out of the ordinary.  He never noted that the Groffs decided not to pursue the claim.  Just because the Groffs were mostly worried about the chemical damage to their home does not mean that they did not want every item of damage to be repaired.  It is unreasonable for an insurer to deny a claim as wear and tear, then later argue that it did not know the insured really wanted to pursue the claim it already denied. State Farm's argument is preposterous.

Additionally, State Farm never investigated whether the Groffs suffered any damages for Lost rent under COVERAGE C – LOSS OF RENTS, which provides coverage for "fair rental value" if a "Loss Insured causes" the insured premises "to become uninhabitable."  Under Coverage C, the determining factor for coverage is the *cause* of the loss.  Here, the Court has already ruled that the *cause* of the loss was the tenant's manufacture of methamphetamine.[4]  The Policy provides coverage for lost rent because the *cause* of the loss is not excluded.  *See Moulder*, 6:10-cv-00230-RAW, at 9 (Losses Not Insured section only applies to coverage sections expressly referenced).  State Farm never even asked the Groffs how much rent they were going to lose as a result of the home being uninhabitable due to the extensive chemical damage.  *Ex. 3.*  State Farm owes the Groffs 12 months of lost rent at $650.00/mo.  *Ex. 3.*  State Farm never evaluated the Groff's lost rent because it was set on denying the entire claim as contamination and wear and tear.

Finally, it was unreasonable for State Farm to not evaluate the Groffs' claim under the DEBRIS REMOVAL ENDORSEMENT FE-7540 to SECTION I – ADDITIONAL COVERAGES. Exclusions (i) and (j) clearly do not apply to any debris that must be removed from the rent house.  However, State Farm never investigated to determine whether any debris needed to be removed, or whether the relevant Policy language afforded coverage for these costs.

---

[4] The operation of a drug lab, which results in damage to a home, constitutes vandalism, a covered peril.  *See Graff v. Allstate Ins. Co.*, 54 P.3d 1266 (Wash. App. 2002); *Bowers v. Farmers Ins. Exch.*, 991 P.2d 734 (Wash. App. 2000); *Livaditis v. Am. Cas. Co. of Reading, PA*, 160 S.E.2d 449 (Ga. App. 1968).

In sum, State Farm was set on denying the Groffs' claim in whole because it involved the manufacture of methamphetamine, and there was no fire or explosion.  From the very outset, the claims representatives indicated that the claim would be denied because of the contamination exclusion.  State Farm noted that there was observable physical damage to the home, but looked for any exclusion that could arguably apply.  Nothing about the Groffs' loss is wear and tear, deterioration, marring or rust as those terms were meant to apply. State Farm never intended for exclusions (i) and (j) to apply to damage caused by a drug-manufacturing criminal.   If it had, State Farm would have denied the claim in the *Moulder* case.  However, there, State Farm acted reasonably by paying for the damage resulting from hydrofluoric acid contamination. There is no material difference between etched glass and pitted metal. The only difference is the State Farm claim representatives here refused to acknowledge that payment was owed. State Farm was just looking for any way possible to deny coverage for the loss. State Farm never investigated the pitting and corrosion to the almost new metal fixtures. Instead, the Groffs had to hire their own metallurgist to show the damage their home has suffered.  A reasonable insurer would have investigated further.

Further, it is disingenuous for State Farm to claim that the Groffs abandoned the claim for non-chemical damage when its investigator cannot even point to any statement by Mr. Groff that would suggest they did not want to pursue the claim.  To the contrary, the investigator noted the damage, photographed it, and it was denied as wear and tear.  This was patently unreasonable.  State Farm failed to act reasonably and in good faith when it was asked to perform under the Policy.  Based on the evidence, a jury could reasonably perceive State Farm's actions as tortious.  Thus, summary judgment cannot be granted on the Groffs' claim for bad faith in failing to investigate and pay their claim.

WHEREFORE, Todd and Dianne Groff respectfully request that this Court enter an Order denying State Farm's Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I hereby certify that on the ___9th___ day of ___April___, 2012, I electronically transmitted the foregoing document to the Clerk of Court using ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

David V. Jones
Benjamin G. Kemble
Jones, Andrews & Ortiz
21 E. Main St., Suite 101
Oklahoma City, OK 73104
*dvj@jao-law.com*
*bkemble@jao-law.com*

/s/ RANDALL E. LONG

26